UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF COLORADO

In re:

Steve T. Gorbet aka Steven Thomas Gorbet

    Debtor,

Nissan Motor Acceptance Corporation

    Movant,

vs.

Steve T. Gorbet aka Steven Thomas Gorbet
and
David E. Lewis, Trustee
    Respondents.

Bankruptcy Case No. 08-21940 abc

Chapter 7

## MOTION FOR RELIEF FROM STAY

    COMES NOW Nissan Motor Acceptance Corporation, Movant, by and through counsel, Grossman and Grossman, and Alan M. Grossman, and shows unto the Court as follows:

1. Movant is the owner and Lessor and Debtor is Lessee under a Motor Vehicle Lease Agreement, copy attached as Exhibit A, on the following vehicle: 2007 Nissan Pathfinder, Vin. #5N1AR18W47C649717.

2. Said Lease calls for payments of $634.17 per month. Debtor is due for June 28, 2008 through August 28, 2008 and is delinquent in the amount of $1,902.51. The balance owing on the contract is $32,316.70, and the Retail value of the vehicle is $21,000.00.

3. The Movant lacks adequate protection of its interest in the vehicle; the secured position of Movant is impaired because of depreciation resulting from continued use and decline in condition of said vehicle.

4. Upon information and belief, the Debtor lacks equity in the motor vehicle and Movant is entitled to relief under 11 U.S.C. 362(d)(2).

5. Based on the debtor's default and lack of equity, Movant maintains the motor vehicle is not necessary to an effective reorganization.

6. Movant believes there has been, and continues to be, a decline in value of the motor vehicle. Continuation of the stay in this case has the effect of depriving Movant of the security for its claim for which the Movant should be entitled to relief for cause under 11 U.S.C. 362(d)(2), and in Re Johnson, 63 B.R. 550 (D. Colo. 1986).

7. Movant requests the Debtor make the motor vehicle available and the ten day provisions of F.R.Bankr.P. 4001(a)(3) not apply in the event of no response.

    WHEREFORE, Movant prays for relief from Automatic Stay entered herein, and for leave to proceed as to the subject vehicle. Movant requests that there shall be no Stay of the Order sought in accordance with Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.

September 17, 2008

GROSSMAN AND GROSSMAN
/s/ Alan M. Grossman
Alan M. Grossman, No. 4188
Attorneys for Movant
363 S. Harlan St., Suite 280
Lakewood, CO 80226
(303) 934-1202

# SignatureLEASE
**NISSAN MOTOR ACCEPTANCE CORPORATION**
FORM# 3460
Motor Vehicle Lease Agreement
DEAL S89175
STOCK 7C649717

Exhibit A

## 1. PARTIES

**Lessor:** GO NISSAN 104TH
2400 W. 104TH AVE
DENVER, CO 80234
303-469-1721
05/29/2007
3525

**Lessee & Co-Lessee:** STEVEN THOMAS GORBET
2060 HARMONY PARK DRIVE
WESTMINSTER CO ADAMS 80234
80294

"You" and "your" refer equally to the Lessee and Co-Lessee (if any) signing this Lease. "We," "us" and "our" refer to the Dealer, to Nissan-Infiniti LT ("NILT") and any other assignee, if this Lease is assigned. "Vehicle" refers to the Motor Vehicle described below, including attachments, equipment and accessories. You agree to lease this Vehicle from us under the terms on the front and back of this Lease. You understand that this is a Lease. You do not own this Vehicle, unless and until you exercise your option to purchase this Vehicle.

## 2. DESCRIPTION OF LEASED PROPERTY

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE IDENTIFICATION NUMBER (VIN) |
|------|------|-------|------------|-------|
| 2007 | NISSAN | PATHFINDER | UT | 5-N-1-A-R-1-8-W-4-7-C-6-4-9-7-1-7 |

☒ New ☐ Used    ODOMETER READING: 15    COLOR/KEY CODE: AVALANCHE    Primary Use: ☐ Commercial ☒ Personal, Family or Household

## 3. CONSUMER LEASING ACT DISCLOSURE BOX

**AMOUNT DUE AT LEASE SIGNING OR DELIVERY** (From Section 4, itemized below): $634.17

**MONTHLY PAYMENTS:** Your first monthly payment of $634.17 is due on signing, followed by 38 payments of $634.17 due on the 28TH each month, beginning on 06/28/2007. The total of your monthly payments is $24732.63

**OTHER CHARGES** (Not part of your monthly payment):
a) Disposition Fee (if you do not purchase the Vehicle): $N/A
b) N/A + $N/A
c) N/A + $N/A
d) Total: $N/A

**TOTAL OF PAYMENTS** (The amount you will have paid by the end of the Lease): $24732.63

*In addition, you may have to pay excess wear and use and mileage, if any.*

## 4. ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

**AMOUNT DUE AT LEASE SIGNING OR DELIVERY**
a) Capitalized Cost Reduction, including any net trade-in allowance: $N/A
b) First Monthly Payment: +$634.17
c) Refundable Security Deposit: +$N/A
d) Title Fees: +$N/A
e) Registration Fees: +$N/A
f) Tax on Capitalized Cost Reduction: +$N/A
g) Sales Tax Paid in Advance: +$N/A
h) N/A: +$N/A
i) N/A: +$N/A
j) N/A: +$N/A
k) Total: =$634.17

**HOW THE AMOUNT DUE AT LEASE SIGNING OR DELIVERY WILL BE PAID**
I) Net Trade-In Allowance: $N/A
II) Rebates and Non-Cash Credits: +$N/A
III) Amount To Be Paid in Cash: +$634.17
IV) Total: =$634.17

## 5. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW

a) **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($33100.00) and any items you pay over the lease term such as taxes, fees, service contracts, insurance and any outstanding prior credit or lease balance. If you want an itemization of this amount, please see Section 7: $38962.20

b) **Capitalized Cost Reduction.** The amount of any net trade-in allowance, rebate, non-cash credit or cash you pay that reduces the gross capitalized cost: N/A

c) **Adjusted Capitalized Cost.** The amount used in calculating your base monthly payment: $38962.20

d) **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your base monthly payment: $17576.00

e) **Depreciation and Any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the lease term: $21386.20

f) **Rent Charge.** The amount charged in addition to the depreciation and any amortized amounts: +$1366.79

g) **Total of Base Monthly Payments.** The depreciation and any amortized amounts plus the rent charge: =$22752.99

h) **Lease Payments.** The number of payments in your Lease: ÷ 39

i) **Base Monthly Payment:** =$583.41

j) **Monthly Sales, Use or Lease Tax:** +$50.76

k) **Monthly Luxury Tax:** +$N/A

l) **Total Monthly Payment:** =$634.17

## 6. IMPORTANT TERMS

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be. See Section 13.

**Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 12,000 miles per year at the rate of 15 cents per mile. See Section 19. ☐ If this box is checked, this mileage includes N/A miles over the term of the lease purchased at N/A cents per mile, which is included in your monthly payment. There will be no refund for unused miles, including any additional miles purchased by you.

**Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the lease term for $17576.00 and a Purchase Option Fee of $150.00 See Section 14.

**Other Important Terms.** This Lease contains additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

## 7. ITEMIZATION OF GROSS CAPITALIZED COST

The following items you will pay over the lease term and are in your monthly payment:

a) Agreed upon value of the Vehicle: +$33100.00
b) Up-Front Sales Tax, if applicable: +$N/A
c) Title, License and Registration: +$7.20
d) Acquisition Fee: +$595.00
e) Service Contract and/or Maintenance Contract (See Section 10): +$N/A
f) Credit Life and/or Disability Insurance (See Section 10): +$N/A
g) Outstanding Prior Credit or Lease Balance: +$5260.00
h) N/A: +$N/A
i) **Total Gross Capitalized Cost:** =$38962.20

## 9. ESTIMATED FEES AND TAXES

The estimated total amount you will pay for official and license fees, registration, title and taxes, including personal property taxes, over the term of your Lease, whether included with your monthly payments or assessed otherwise is $1986.84. The actual total of fees and taxes may be higher or lower depending on the tax rates in effect or the value of the leased property at the time a fee or tax is assessed.

## 10. OPTIONAL INSURANCE AND WARRANTIES

These coverages are not required to enter into this Lease and will not be provided unless you sign below. If insurance and/or warranties are purchased by you, the coverages are shown in a notice given to you on this date and are for the term of the Lease. (Please see below.) These coverages may not be available in some states.

**Credit Life Insurance**
INSURER: N/A    INITIAL COVERAGE AMOUNT: N/A
INSURED(S):    PREMIUM: N/A
LESSEE INITIALS:    CO-LESSEE INITIALS:

**Credit Disability Insurance**
INSURER: N/A    MONTHLY COVERAGE AMOUNT: N/A
INSURED(S):    PREMIUM: N/A
LESSEE INITIALS:    CO-LESSEE INITIALS:

**Mechanical Breakdown Protection**
(Covers parts of Vehicle up to sooner of N/A months or N/A miles).
PROVIDER: N/A    CHARGE: N/A
LESSEE INITIALS:    CO-LESSEE INITIALS:

**Maintenance Contract**
PROVIDER:    CHARGE:
LESSEE INITIALS:    CO-LESSEE INITIALS:

Total Premiums/Charges: $N/A

## 8. VEHICLE WARRANTIES

This Vehicle is covered by any warranty, extended warranty, service contract or maintenance contract indicated below:
☐ Standard New Vehicle Limited Warranty provided by the manufacturer or distributor of this Vehicle
☐ Mechanical Breakdown Protection (MBP), a service contract for the repairs of certain major mechanical breakdowns of this Vehicle and related expenses
☐ Maintenance Contract, a contract for regularly scheduled care and maintenance of this Vehicle
☐ Used Vehicle Limited Warranty
☐

**EXCEPT AS EXPRESSLY PROVIDED UNDER THIS LEASE, WE OFFER NO EXPRESS OR IMPLIED WARRANTIES WITH RESPECT TO THIS VEHICLE. WE MAKE NO IMPLIED WARRANTY OF MERCHANTABILITY. THE LESSOR UNDERTAKES NO RESPONSIBILITY FOR THE QUALITY OF THE GOODS EXCEPT AS OTHERWISE PROVIDED IN THIS CONTRACT. THE LESSOR ASSUMES NO RESPONSIBILITY THAT THE GOODS WILL BE FIT FOR ANY PARTICULAR PURPOSE FOR WHICH YOU MAY BE LEASING THESE GOODS, EXCEPT AS OTHERWISE PROVIDED IN THE CONTRACT.**

NILT/N 3001 10/04    ORIGINAL    *N-CPNILT*

Case:08-21940-ABC Doc:9-11 Filed:09/17/08 Entered:09/17/08 14:27:18 Page 3 of 7

## Additional Terms and Conditions

### ENDING YOUR LEASE

**11 Vehicle Return**
When your Lease terminates, whether early or as scheduled, you will return the Vehicle to a Nissan dealer or other location we specify. You will complete a statement of this Vehicle's mileage at termination as required by federal law. If you keep possession of this Vehicle past the end of the lease term, you will continue to pay the monthly payments, but you agree that you have no right to keep this Vehicle unless you enter into a written agreement with us extending the lease term. You will pay us for any damages we suffer because you failed to return this Vehicle to a Nissan dealer or other location we specify or because you failed to return this vehicle at the end of the lease term. We may determine our damages in one of the following two ways at our election and in our sole discretion: a) by charging you the Total Monthly Payments for each month the Vehicle is not returned as required plus any other amounts due under Sections 12 and 24; or b) by charging you for amounts due under the formula provided in Section 13 and any amounts due under Sections 12 and 24.

**12 Scheduled Termination**
The scheduled term of your Lease is the number of months corresponding to the number of monthly payments identified in Sections 3 and 5. At the end of the lease term, you will return this Vehicle and pay us immediately:
a) a Disposition Fee equal to the amount disclosed in Section 3; plus
b) all past-due monthly payments, and other charges under this Lease; plus
c) any amounts owed as a result of excessive wear and use, as disclosed in Section 19; plus
d) any Excess Mileage Charge at lease maturity, or an Excess Mileage Charge for the period for which this Lease was in effect pro-rated monthly, as disclosed in Section 6; plus
e) any taxes related to the termination.

**13 Early Termination**
a) Conditions for YOUR early termination. You may terminate this Lease before the end of the lease term, effective on the date of a monthly lease payment, if you return the Vehicle, you are not in default, you have paid at least **12** monthly payments, you give us at least **30** days prior written notice and you pay us the amount disclosed in Section 13.a).
b) Conditions for OUR early termination. We may terminate this Lease before the end of the lease term under Section 25 or if you are in default as described in Section 24.

### VEHICLE INSURANCE, MAINTENANCE, PAYMENTS AND USE

**14 Insurance**
You are responsible for the following minimum types and amounts of coverage ("Required Insurance") during the lease term: a) Comprehensive, including fire and theft insurance if this Vehicle is a car, or fire, theft and combined additional coverage if this Vehicle is a truck, with a maximum deductible of **$1,000**. b) Collision insurance with a maximum deductible of **$1,000**. c) Property damage liability of **$50,000** per occurrence, and d) Bodily injury liability of **$100,000** per person and **$300,000** per occurrence. Your insurance policy must name us as loss payee on coverages (a) and (b). You will provide us with proof of insurance at our request. Your insurance policy must provide us with at least **30** days notice of any cancellation, reduction or other material change in coverage. You appoint us as your attorney-in-fact to arrange for and procure payment of insurance loss proceeds directly with your insurance carrier (s) and to endorse, present and collect insurance loss proceeds checks.
NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.

**15 Late Charge, Returned Check Charge, and Fines**
If any monthly payment is not received in full by us within **15** days after its due date, you will pay a late charge of **5%** of the monthly payment due or **$25.00**, whichever is less or as allowed by state law. Payments shall be applied to the most past-due payment first. If any payment (including any electronic funds transfer) you make to us is not honored, or is charged back to us, in addition to any late charge, you will pay us a **$10.00** service charge, or such other charge as allowed by law. You will pay when due any fine imposed on this Vehicle, such as a parking ticket, traffic or toll violation. Should we have to pay any fine on your behalf, you will pay us the amount of the fine plus a **$10.00** administrative charge, or such other charge as allowed by law.

**16 Official Fees and Taxes**
You will pay when due all official fees and taxes, including registration, title and license fees, and personal property taxes related to this Vehicle or this Lease, which are incurred during the lease term, even if they are assessed after this Lease terminates. Should we have to pay any official fee or tax on your behalf, you will pay us the amount of the official fee or tax, and any interest or penalties assessed. You may also agree to pay personal property taxes in advance of the applicable due date, by mutual settlement of an estimated amount with us.

**17 Vehicle Maintenance and Use**
You agree to maintain this Vehicle at your own expense. You agree to follow the owner's manual and maintenance schedule and to make all necessary repairs and replacement of parts. Failure to properly maintain this vehicle in accordance with the owner's manual and/or maintenance schedule may result in excessive wear and use charges. This Vehicle may not be used for any illegal purpose or to transport people or goods for hire (Except for occasional and incidental use (not to exceed a total of 3 days in any month)) by other licensed, qualified operators with your permission, you shall retain possession of this

### ADDITIONAL INFORMATION

**20 Notices and Communications**
Unless you give prior written notice of a change to your address, we may send any notices to one or more of the Lessee's addresses shown on this Lease. Any notice will be deemed sufficiently given to a Co-Lessee if sent to the Lessee's address, unless you give us written notice of a separate address. You will notify us within **30** days of any address change. To the extent permitted by law, you consent that we may call you at any telephone number we have for you, including any cell phone, by any means we select, including an automatic telephone dialing system and/or an artificial or prerecorded voice.

**21 Security Deposit**
We may use the security deposit to offset any amounts that you owe under this Lease. If you perform all of your obligations under this Lease, the security deposit will be returned to you at the end of the lease term. No interest, increase or profits will accrue or be due to you. We have no duty to segregate the security deposit and do not have a fiduciary duty to you in regards to the security deposit.

**22 Security Interest**
Unless otherwise precluded by applicable law, you give us a security interest in this Vehicle or in proceeds, cancellation refunds or other rights under any contract issued with respect to this Vehicle, this Lease or any addendum to this Lease, including, without limitation, insurance contracts, maintenance contracts, repair contracts and extended warranty or service contracts.

**23 Assignment**
We may assign our interest in this Lease without prior notice and without your consent.
YOU AGREE THAT YOU HAVE NO RIGHT TO ASSIGN, TRANSFER OR SUBLEASE ANY OF YOUR RIGHTS UNDER THIS LEASE

**24 Default and Payments**
You will be in default if a) you do not make a payment when due; b) any information on your or a guarantor's credit application is false; c) you do not maintain insurance coverage required by this Lease; d) you do not timely or properly perform any obligation under this Lease; e) you or a guarantor becomes subject to bankruptcy or insolvency proceedings. If you commit any other act constituting default under applicable law. In the event of default, we may terminate this Lease and, after giving any legally required notice: (i) charge you for early termination liability pursuant to Section 13; (ii) repossess this Vehicle as allowed by law; (iii) charge you for our costs of such repossession, storing, transporting and disposing of this vehicle; (iv) charge you for our costs of collection, any court costs and attorneys fees to the extent permitted by applicable law; (v) sue you for damages and to recover this Vehicle; (vi) and/or pursue any other legally permitted remedy. Unless otherwise required by law, we are not required to give you prior notice of our termination of this Lease pursuant to this section and your resulting early termination liability as determined in Section 13. To the extent permitted by law, you agree that if we accept moneys in sums less than those due, accept payments which are received after their scheduled due dates, or make extensions of due dates of payments under this Lease, doing so will not be a waiver of our right to enforce the lease terms as written as to any amounts due thereafter. We may accept payments with "Payment in Full," similar language or other restrictive endorsements without being bound by such language or waiving any of our rights.

**25 Damage, Loss or Potential Loss of This Vehicle**
You are responsible for the risk of loss, damage or destruction of this Vehicle during the lease term and until you return this Vehicle to us as required above. If the Vehicle is damaged or destroyed in an accident or other occurrence or confiscated by any governmental authority or is stolen, abandoned or subjected to potential loss, you will immediately notify us and we may terminate this Lease pursuant to the terms of this Lease. If this Vehicle is stolen (and not recovered) or destroyed, we will accept insurance loss proceeds in full satisfaction of your early termination liability if you are in compliance with the following: 1) your insurance obligations under this Lease are satisfied; 2) your policy covers the casualty and you have paid the deductible required by the policy; and 3) your Lease is not in default. If the insurance loss proceeds exceed your early termination obligations, then the excess will not be refunded to you. Any capitalized cost reduction made by you will not be refunded in the event of a total loss. If you owe any past due payments or other amounts under this Lease, we may use your security deposit to offset such amounts. All damages which do not result in a total loss of the Vehicle must be repaired. We may require proof of satisfactory repairs before agreeing to our endorsing the payment of insurance proceeds to you. This may include requiring an inspection of the vehicle. Repairs which involve severing the Vehicle into two or more parts are not permitted. Repairing the Vehicle with used parts may void the manufacturer's warranty or any additional warranties, service contracts or maintenance contracts covering the Vehicle. If used parts are installed to repair the Vehicle, the used parts must be Genuine Nissan Remanufactured parts, be of the same model year or newer than the parts being replaced and, if applicable, the mileage of the used part must be the same or less than the mileage of the Vehicle

c) Any amounts due under Section 11 or Section 13.b), then you will pay us:
i) the amounts disclosed in Section 12, plus
ii) an Early Termination Charge equal to the difference, if any, between the Adjusted Lease Balance and this Vehicle's Fair Market Wholesale Value or if we do not terminate this Lease under Section 13.b), an Early Termination Charge equal to the sum of the Base Monthly Payments not yet due, if less; plus
iii) if you are in default, the amounts disclosed in Section 24.
"Adjusted Lease Balance" is a charge as today's dollars ("today" being the date the Lease is terminated) for Base Monthly Payments not yet due and the Residual Value of the Vehicle. Our method of calculating "today's dollars" is the Constant Yield Method, a generally accepted accounting formula.
"Fair Market Wholesale Value" is the wholesale value assigned by us in a commercially reasonable manner in accordance with accepted practices in the automobile industry for valuation of used vehicles, or by a written agreement as to the Vehicle's value signed by you and us. If you disagree with the value we assign to the Vehicle, you at your own expense, within 10 days after you return the Vehicle, a professional appraisal of that Vehicle's wholesale value or comparable value made by a independent third party agreeable to both you and us (the "Professional Appraisal"). If a Professional Appraisal is used to value the Vehicle, no amount disclosed in Section 19 will be that from you.
In the event early termination of this Lease occurs at your election pursuant to Section 13.a), you hereby agree that the Fair Market Wholesale Value is the wholesale value, of comparable value listed for the Vehicle, at the time of the early termination, in one of the following used vehicle valuation guides, at our election: National Automobile Dealers Association (NADA), Kelley or Black Book.

**18 Purchase Option**
You have the option to purchase this Vehicle "AS IS" from the originating dealer or other location we specify, in cash for the Purchase Option Price, plus any official fees and taxes, vehicle inspection costs required in connection with the purchase, and a Purchase Option Fee of **$150.00**. With fees, taxes and costs not included in the Purchase Option Price agreed to in Section 6. If you purchase the Vehicle at the end of the lease term, the Purchase Option Price will be the Residual Value shown in Section 5.d). If you purchase the Vehicle before the end of the lease term, the Purchase Option Price will be the Adjusted Lease Balance disclosed in Section 13.a). In either case, you must also pay any other amounts due under this Lease at the time of purchase.

Vehicle. Except as allowed in this Section, you will not alter or install any equipment upon this Vehicle and will pay our cost to restore the Vehicle to its original condition. You may elect to have an airbag on/off switch installed in the Vehicle, at your expense, if you have received prior written approval from the National Highway Transportation Safety Administration ("NHTSA") and you provide us written notice (including a copy of the NHTSA approval and the dealer's written confirmation of the installation) within 30 days after installation. The switch must be installed by an authorized Nissan dealer using Nissan parts. If an airbag on/off switch is installed, you release us from any claims, losses or damages resulting from such installation, improper installation of your use or improper use of the switch. You agree to indemnify us for any loss, liability or expense arising from the use or condition of this Vehicle. You agree to keep this Vehicle free from liens and encumbrances. If you leased this Vehicle in the 48 contiguous United States, you will not remove this Vehicle from these 48 states without our prior consent. If you leased this Vehicle in Alaska, Hawaii, or Guam, you will not remove this Vehicle from that state to another location without our prior consent. If you remove this Vehicle from your state of residence or the garaging address identified in this Lease such that new registration or licensing will be required, you will comply immediately in writing and will bear all related expenses. You will provide and complete any document necessary to comply with any applicable federal, state or local law regarding this Vehicle or this Lease.

**19 Excessive Wear and Use**
You are responsible for all repairs to this Vehicle that are not the result of normal wear and use. At the end of the lease term or at early termination, you will pay us the amount it would cost for the repairs (except in the cases where a Professional Appraisal is set forth in Section 13 is used to value the Vehicle). These repairs include, but are not limited to, the costs necessary to:
a) REPAIR: inoperative mechanical parts including power accessories; dents, scratches, chips or rusted areas on the body; mismatched paint; broken windows or inoperative window mechanisms; broken headlight lenses or sealed beams, dents, cuts, scratches or gouges in the bumper; broken grilles or dents in the grilles; single dents or a series of small dents on other trim parts; including headlight and taillight bezels; or seats, seat belts, head lining, door panels or carpeting that are torn or are damaged beyond ordinary wear and use or are burned
b) REPLACE: any windshield damaged with chips, cracks or bull's-eyes; any tire not part of a matching set of **5** tires (or four with an emergency spare), or tires with less than **1/8"** of tread remaining at the shallowest point, or tires which are not a matching set of tires of comparable type and quality as the tires furnished with this Vehicle upon commencement of this Lease; missing parts, accessories and adornments, including bumpers, ornamentation, aerials, hubcaps, chrome stripping, rearview mirrors, radio and stereo components, or emergency spare.
You agree that upon notice from us and as allowed by State law you will make the Vehicle available to us prior to the scheduled termination of this Lease, at a reasonable time and place to be designated by us, so that we may inspect the Vehicle for purposes of determining excessive wear and use. You agree that any assignee of this Lease is not bound by an statements or representations made by any dealer regarding excess wear and use or the vehicle condition upon return. You agree that for the purposes of determining excess wear and use the only inspection(s) that will be used is (are) the inspection(s) made by the assignee or its designated inspection contractor.

prior to its damage. Used parts must not have been previously damaged or defective. Used body panels cannot replace damaged body panels.

**26 Indemnity**
You agree to indemnify us from, and to pay on our behalf, any claim, loss or liability (including damages, costs, expenses and legal fees) which arises from or is related to the use, maintenance or operation of the Vehicle. This Section will survive termination of this Lease and/or repossession of the Vehicle. Any insurance we provide is secondary to the Required Insurance.

**27 Notices Regarding Assignments**
If this Lease and the Vehicle are assigned by the Dealer to NILT, then:
(1) The Dealer is hereby notified that NILT has assigned to Nissan-Infiniti Services Co. (NISC) NILT's rights (but not its obligations) to acquire the Vehicle upon Lease inception; and
(2) The Dealer and Lessee are hereby notified that NILT's rights (but not its obligations) in the sale of the Vehicle, if the Vehicle is subsequently purchased from NILT, will be assigned to NISC immediately prior to the purchase of the Vehicle. If the Lessee is purchasing the Vehicle, the Lessee will then sell the Vehicle to a dealer, who will then sell the Vehicle to the Lessee.

**28 ARBITRATION CLAUSE – IMPORTANT – PLEASE REVIEW – AFFECTS YOUR LEGAL RIGHTS**
1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE, EXCEPT AS STATED BELOW, BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Except as otherwise stated below, any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relate to your credit application, this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. The choice of dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations and its applicable rules: the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com), the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization that you may choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or writing us directly.
Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside unless the Dealer is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $1,500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this clause, then the provisions of this clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for their filing fee and other arbitration costs subject to a final determination by the arbitrator of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration.
You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. This clause does not apply to any claim or dispute relating to excessive wear and use, including collection or payment disputes. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This clause shall survive any termination, payoff or transfer of this Lease. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.

### SIGNATURES

**SignatureDIRECTPAY AUTHORIZATION AGREEMENT (Not required. Please complete and sign if you want this option.)**
You authorize and request us to initiate electronic debit entries or effect a charge by any other commercially accepted practice to your account at the financial institution (Bank) listed below, and you request and authorize the Bank to honor the debit entries initiated by us and debit such account. This authorization pertains to your payments described in this contract. The authority is to remain in force and effect until the schedule of payments is completed or until Lessor and Bank have received written notification from you of its termination in such time and manner as to allow a reasonable opportunity to act. A voided check, including Bank name, branch address, and account number, is provided by you to us in order to arrange the debits or charges.

| SIGNATURE/DATE (LESSEE OR CO-LESSEE) | SIGNATURE/DATE (BANK ACCOUNT OWNER OR JOINT OWNER) | BANK NAME |
|---|---|---|

This Lease is the entire agreement and can only be changed by written agreement between the Lessee, Co-Lessee (if applicable) and Dealer, NILT or any other assignee, if this Lease is assigned. There are no other written or verbal agreements. Any provision of this Lease which is invalid, illegal or unenforceable shall be ineffective without affecting in any way the remaining provisions. All lessees and guarantors are jointly and severally liable.

**Lessee**
**NOTICE: THIS CONTRACT CONTAINS AN ARBITRATION CLAUSE. PLEASE SEE ABOVE.**
YOU HAVE READ BOTH SIDES OF THIS LEASE BEFORE SIGNING. YOU ARE ENTITLED TO AND HAVE RECEIVED A COMPLETED COPY OF THIS LEASE.
By signing below, you acknowledge that: • This Lease is completely filled out; • You have read this entire Lease carefully and agree to all of its terms
CAUTION — IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

_[signature]_

| LESSEE SIGNATURE | BUSINESS NAME | NAME (PLEASE PRINT) |
|---|---|---|
| CO-LESSEE SIGNATURE | IF GUARANTEED | TITLE |

**Guarantor**
For purposes of this section, I/me/my/our/ours refers solely to Guarantor. I/We jointly, severally and unconditionally guarantee the performance of all payments and other obligations of the Lessee, under this Lease. Upon any default by Lessee, Lessor may, at Lessor's option, proceed immediately against me/us without first proceeding against Lessee; any other guarantor or taking possession of and disposing of this Vehicle. My/Our liability is primary and will be unaffected by any settlement, compromise, extension, renewal or modification of this Lease or by any release or discharge of Lessee or other guarantor. I/We waive all notices and all rights to demands and presentments. This guarantee inures to the benefit of Lessor's successors and assigns.

| GUARANTOR SIGNATURE | GUARANTOR SIGNATURE |
|---|---|
| PRINT NAME | PRINT NAME |

**Lessor**
a) Lessor accepts the terms of this Lease; and
b) Lessor assigns and transfers to Nissan-Infiniti LT ("NILT") all of Lessor's rights, title and interest in and to this Vehicle and this Lease including all amounts payable thereunder, pursuant to the terms of the applicable written Retailer Agreement between Lessor and Nissan Motor Acceptance Corporation ("NMAC"), the benefits of which have been assigned by NMAC to NILT for purposes of leases assigned to NILT. Any guaranty by Retailer is made notwithstanding the terms of the Retailer Agreement.
By signing below, the Lessor accepts the terms and conditions of this Lease.

Go Nissan 10401 _[signature]_

| LESSOR (DEALER NAME) | LESSOR SIGNATURE |
|---|---|

NILT/S 3003 10/04

STATE OF COLORADO
**CERTIFICATE OF TITLE**
****MOTOR VEHICLE****

| | | | | | TITLE NUMBER |
|---|---|---|---|---|---|
| | | | | | 12R720592 |

| VIN | YEAR | MAKE | MODEL | BODY | ODOMETER |
|---|---|---|---|---|---|
| 5N1AR18W47C649717 | 2007 | NIS | | UP | 15    A |

MAIL TO

ODOMETER LEGEND:
A – Actual Mileage
E – Exceeds mechanical limits
N – Not actual mileage: WARNING ODOMETER DISCREPANCY

NISSAN INFINITI LT
POB 254648
SACRAMENTO CA 95865

CWT/CAP/SIZE
CWT 46
PREVIOUS TITLE
MSO
FUEL
GAS
DATE PURCHASED
05/29/2007
DATE ACCEPTED
07/09/2007
DATE ISSUED
07/18/2007

OWNER
NISSAN INFINITI LT

FIRST LIENHOLDER                                    DATE RCD

FILE NUMBER

Signature below certifies under penalty of perjury in the second degree the release of the first lienholder's interest in the vehicle.

AMOUNT OF LIEN    LIEN EXTENDED TO COUNTY    MATURITY DATE

Lienholder's Name

Authorized Agent's Signature   Date

SECOND LIENHOLDER                                  DATE RCD

FILE NUMBER

Signature below certifies under penalty of perjury in the second degree the release of the second lienholder's interest in the vehicle.

AMOUNT OF LIEN    LIEN EXTENDED TO COUNTY    MATURITY DATE

Lienholder's Name

Authorized Agent's Signature   Date

THIRD LIENHOLDER                                   DATE RCD

FILE NUMBER

Signature below certifies under penalty of perjury in the second degree the release of the third lienholder's interest in the vehicle.

AMOUNT OF LIEN    LIEN EXTENDED TO COUNTY    MATURITY DATE

Lienholder's Name

Authorized Agent's Signature   Date

FOURTH LIENHOLDER                                  DATE RCD

FILE NUMBER

Signature below certifies under penalty of perjury in the second degree the release of the fourth lienholder's interest in the vehicle.

AMOUNT OF LIEN    LIEN EXTENDED TO COUNTY    MATURITY DATE

Lienholder's Name

Authorized Agent's Signature   Date

THE APPLICANT HAS BEEN DULY REGISTERED IN THIS OFFICE AS THE OWNER OF THE MOTOR VEHICLE DESCRIBED, SUBJECT TO LIENS AND ENCUMBRANCES IN THE ORDER SHOWN.

EXECUTIVE DIRECTOR, COLORADO DEPARTMENT OF REVENUE    DATE DUPLICATE ISSUED

**ROXY HUBER**

H2799946

KEEP IN SAFE PLACE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE

REV. 10/9/06

VOID IF ALTERED

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:
Steve T. Gorbet aka Steven Thomas Gorbet

      Debtor,

Nissan Motor Acceptance Corporation

      Movant,
vs.

Steve T. Gorbet aka Steven Thomas Gorbet
and
David E. Lewis, Trustee
      Respondents.

Bankruptcy Case No.
08-21940 abc

Chapter 7

## NOTICE OF HEARING OR PRELIMINARY HEARING

    YOU ARE HEREBY NOTIFIED that a Motion for Relief from Stay, a copy of which is herewith served on you, has been filed with the Court. A hearing on the motion has been set for October 16, 2008 at 9:00 o'clock A.M. in **Courtroom C** located at in the U.S. Bankruptcy Court, U.S. Custom House, 721 19th Street, Denver, CO, 80202-2508. The hearing will be conducted in accordance with the provisions of Local Bankruptcy Rule 401.

    If you desire to oppose this Motion, you are required to file with this Court and serve upon Alan M. Grossman, Attorney, whose address is 363 S. Harlan St., Suite 280, Lakewood, CO 80226, a written response to the motion on or before (5) court days prior to the date of the hearing.

    If you fail to file a response, an order granting the relief requested will be granted without further notice to you.

September 17, 2008

GROSSMAN AND GROSSMAN

    /s/ Alan M. Grossman
Alan M. Grossman, No. 4188
Attorneys for Movant
363 S. Harlan St., Suite 280
Lakewood, CO 80226
(303) 934-1202

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:
Steve T. Gorbet aka Steven Thomas Gorbet   }   Bankruptcy Case No.
                                            }   08-21940 abc
        Debtor,                             }
                                            }   Chapter 7
Nissan Motor Acceptance Corporation         }
                                            }
        Movant,                             }
vs.                                         }
                                            }
Steve T. Gorbet aka Steven Thomas Gorbet    }
and                                         }
David E. Lewis, Trustee                     }
        Respondents.                        }

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2008, the undersigned placed in the United States Mail, postage prepaid, a true and correct copy of the Notice of Hearing or Preliminary Hearing, Motion for Relief from Stay addressed to the following:

Steve T. Gorbet
2060 Harmony Park Drive
Westminster, CO 80234

David E. Lewis, Trustee
1314 Main St., #102
Louisville, CO 80027

Jane M. Roberson, Esq.
9035 Wadsworth Pkwy, #1650
Westminster, CO 80021

_____
Diane Roberts

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:
Steve T. Gorbet aka Steven Thomas Gorbet

    Debtor,

Nissan Motor Acceptance Corporation

    Movant,

vs.

Steve T. Gorbet aka Steven Thomas Gorbet
and
David E. Lewis, Trustee
    Respondents.

Bankruptcy Case No.
08-21940 abc

Chapter 7

## AFFIDAVIT OF NON-MILITARY SERVICE

Alan M. Grossman, of Grossman & Grossman PC, as Authorized Agent and Representative of Nissan Motor Acceptance Corporation, being of lawful age, being duly sworn on oath, deposes and states:

1. The Affiant or a member of his staff at his request, has reviewed the Department of Defense Manpower Data Center (DMDC) website regarding information as to any potential active duty status of the debtor(s).

2. The DMDC is an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

3. Upon review of the records of the DMDC, there is no record of the debtor(s) as being eligible for a status commensurate with the status of active military duty which would invoke the Service Members Civil Relief Act.

4. A review of the initiating documents in this case does not reveal any statement regarding the military status of the debtor(s) as is now required by the Court.

5. The foregoing statements are the basis of all information and knowledge available to and possessed by me.

September 17, 2008

GROSSMAN AND GROSSMAN

/s/ Alan M. Grossman
Alan M. Grossman, No. 4188
Attorneys for Movant
363 S. Harlan St., Suite 280
Lakewood, CO 80226
(303) 934-1202

STATE OF COLORADO } ss.
COUNTY OF JEFFERSON }

Subscribed and sworn to before me on 9/17/08

My commission expires 6/7/12

DIANE ROBERTS
NOTARY PUBLIC
STATE OF COLORADO
My Commission Expires 6/7/12

Notary Public