UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:                                                    Bankruptcy No. 08-21940 ABC
                                                          Chapter 7
STEVE T GORBET,
Debtor,

WELLS FARGO BANK, N.A.,
Movant,

STEVE T GORBET, and
David E. Lewis,
the Chapter 7 Trustee,
Respondents.

---

### MOTION FOR RELIEF FROM AUTOMATIC STAY

---

WELLS FARGO BANK, N.A., its predecessors, successors and assigns (Creditor), through its attorneys, CASTLE MEINHOLD & STAWIARSKI, LLC, respectfully represents:

1.     The Debtor is indebted to Creditor pursuant to a Note and Deed of Trust for which the Creditor claims a valid lien or security interest in the following described property (hereinafter "Property"):

        SEE EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN BY
        REFERENCE

Also known and numbered as:  1638 South Deframe Street B-6, Lakewood, CO 80228

2.     Movant has confirmed that the Debtor(s) is/are not on active military duty, pursuant to this Courts' General Procedure Order 2005-2 (see affidavit attached hereto).

3.     This lien or security interest arose from a Note and a Deed of Trust for the benefit of Mortgage Electronic Registration Systems, Inc., as nominee for CH Mortgage Company I, Ltd., true and correct copies of which are attached hereto.  The Creditor is the current owner of this lien or security interest

4.     Notice of this lien or security interest was given by recording said Deed of Trust in the public record of the County of Jefferson reflecting the lien of the Creditor.

5.     The approximate amount due the Creditor on said indebtedness is $160,439.37.

6.     Enforcement of this lien or security interest has been stayed automatically by operation of 11 U.S.C. §362.

7.     The Creditor requests that the automatic stay be terminated with respect to the property above described pursuant to 11 U.S.C. §362 (d)(1) and (2).

8.     The property described in paragraph one (1) above is to be surrendered according to the Statement of Intentions. See 11 U.S.C. §362 (d)(1).

9.      The value of the property described in paragraph one (1) above is $179,800.00 according to the Debtor's Real Property schedule.  The amount of the Creditor's secured claim, $160,439.37, plus a junior lien in the amount of $27,362.00, is more than the value of the property.  As a result, there is no equity in the property described above. See 11 U.S.C. §362 (d)(2).

10.     The Property is not necessary to an effective reorganization because the Debtor is proceeding under Chapter 7 of the Bankruptcy Code. See 11 U.S.C. §362 (d)(2)(b).

11.     For the foregoing reasons, this Creditor is entitled to relief from the automatic stay under 11 U.S.C. 362 § (d)(1) and (2).

12.     The Creditor further requests that the requirements of Fed.R.B.P. 4001(a)(3) be waived so that the Creditor may immediately enforce and implement an order granting relief from stay.

13.     Creditor further requests approval of its reasonable attorney's fees and costs in the amount of $800.00 for its Motion for Relief pursuant to the terms of the loan documents.  Creditor is not seeking an administrative claim but intends to add the fees and costs to the loan pursuant to the contract provisions.

WHEREFORE, Creditor respectfully requests entry of an Order granting Relief from Automatic Stay from the Debtor and the Debtor's Estate, to allow the Creditor to proceed solely *in rem* against the property described in paragraph one above for approval of Creditor's reasonable attorney's fees and costs and that the Creditor be granted such further relief as may be proper.

Dated:  September 18, 2008

CASTLE MEINHOLD & STAWIARSKI, LLC

Britney Beall-Eder, #34935
Jeremy Peck, #36588
Katharine E. Fisher #39230
Attorneys for Movant
999 18th Street, Suite 2201
Denver, CO  80202
303-865-1440
(303) 865-1410 (facsimile)

File No. 08-04415

In re:
STEVE T GORBET

Case No.      08-21940 ABC

### AFFIDAVIT PURSUANT TO THE SERVICEMEMBER CIVIL RELIEF ACT OF 2003

I, Lauren Morain, being of lawful age, first duly sworn, hereby state as follows:

I am over the age of 18 and am an employee of Castle Meinhold & Stawiarski, LLC.

1.      On September 17, 2008, I, Lauren Morain, performed a search on the Department of Defense Manpower Data Center. Upon searching the information data banks of the Department of Defense Manpower Data Center (DMDC), the DMDC does not possess any information indicating that the debtor, Steve T Gorbet is currently on active duty as to all branches of the Military.

Dated: September 17, 2008

*Original signature on file*

By _____
Lauren Morain

The foregoing was subscribed and sworn to before me on this 17ᵗʰ day of Septem_____ 2008.

WITNESS MY HAND AND OFFICIAL SEAL.
My Commission expires: 10-10-10 _____

*Original signature on file.*

NOTARY PUBLIC

> ESTHER RICHMOND
> NOTARY PUBLIC
> STATE OF COLORADO
> My Commission Expires 10/10/2010

File No. 08-04415

# EXHIBIT A

BUILDING 6, UNIT B-6, LAKEWOOD VISTA AT GREEN MOUNTAIN RANCH
ASSOCIATION, INC., IN ACCORDANCE WITH AND SUBJECT TO THE DECLARATION
FOR LAKEWOOD VISTA AT GREEN MOUNTAIN RANCH ASSOCIATION, INC.,
RECORDED ON DECEMBER 29, 1998 UNDER RECEPTION NO. F0767149, AMENDMENT
RECORDED MARCH 12, 1999 UNDER RECEPTION NO. F0822193, AND THE MAP
RECORDED ON JUNE 14, 2000 UNDER RECEPTION NO. F1070829, IN THE OFFICE
OF CLERK AND RECORDER OF JEFFERSON COUNTY, COLORADO.

$65

WHEN RECORDED RETURN TO:

CH Mortgage Company
Post Closing Dept.
4515 Seton Center Parkway, Suite 110
Austin, TX 78759



RECEPTION NO. F1349299
10/31/2001 13:33:15  PG: 001-013
PAGE FEE:   65.00 DOC.FEE:    0.00
RECORDED IN JEFFERSON COUNTY, COLORADO



**State of Colorado**

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

FHA Case No.
052-1878595-734

MIN    100020400021950619
LOAN # CP2195061

THIS DEED OF TRUST ("Security Instrument") is made on  October 24, 2001
among the Grantor,

Steven Thomas Gorbet, an unmarried man

("Borrower"), the Public Trustee of    Jefferson                County ("Trustee"), and the beneficiary,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS"), which is acting solely as nominee for
Lender (as hereinafter defined) and Lender's successors and assigns. MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

CH Mortgage Company I, Ltd.
("Lender") is organized and existing under the laws of       Texas                      , and
has an address of 7001 North Scottsdale Road, Suite 1050, Scottsdale, AZ 85253
                                          . Borrower owes Lender the principal sum of
ONE HUNDRED SIXTY THOUSAND SEVEN HUNDRED SEVENTY SIX & 00/100
                                          Dollars (U.S. $      160,776.00      ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on November 1,
  2031                . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with
interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance

FHA Colorado Deed of Trust with MERS - 4/96
VMP-4N(CO) (9802)          Amended 2/98
Page 1 of 8                Initials: STG
   VMP MORTGAGE FORMS - (800)521-7291



D841641-MN



of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower, in consideration of the debt and the trust herein created, irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in          Jefferson
County, Colorado:

BUILDING 6, UNIT B-6, LAKEWOOD VISTA AT GREEN MOUNTAIN RANCH
ASSOCIATION, INC., IN ACCORDANCE WITH AND SUBJECT TO THE DECLARATION
FOR LAKEWOOD VISTA AT GREEN MOUNTAIN RANCH ASSOCIATION, INC.,
RECORDED ON DECEMBER 29, 1998 UNDER RECEPTION NO. FO767149, AMENDMENT
RECORDED MARCH 12, 1999 UNDER RECEPTION NO. FO822193, AND THE MAP
RECORDED ON JUNE 14, 2000 UNDER RECEPTION NO. F1070829, IN THE OFFICE
OF CLERK AND RECORDER OF JEFFERSON COUNTY, COLORADO.

which has the address of 1638 South Deframe Street B-6,                                    [Street]
Lakewood                                    [City], Colorado 80228          [Zip Code]  ("Property Address");
      TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrowers in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.
      BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
      THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
      Borrower and Lender covenant and agree as follows:
      UNIFORM COVENANTS.
      1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
      2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."
      Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

Initials: STC

VMP-4N(CO) (9802)

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall

also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien, in legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:



Initials: _SG_

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.



Initials: 

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Lender shall mail a copy of the notice to Borrower as provided in paragraph 13. Trustee shall record a copy of the notice in the county in which the Property is located. Trustee shall publish a notice of sale for the time and in the manner provided by applicable law and shall mail copies of the notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's certificate describing the Property and the time the purchaser will be entitled to Trustee's deed. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request that Trustee release this Security Instrument and shall produce for Trustee, duly cancelled, all notes evidencing debts secured by this Security Instrument. Trustee shall release this Security Instrument without further inquiry or liability. Borrower shall pay any recordation costs and the statutory Trustee's fees.

**20. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| | | |
|---|---|---|
| [X] Condominium Rider | [ ] Growing Equity Rider | [X] Other [specify] ARM RIDER |
| [ ] Planned Unit Development Rider | [ ] Graduated Payment Rider | |

Initials: S G

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _Steven Thomas Gorbet_____ (Seal)
                                           Steven Thomas Gorbet        -Borrower

_____          _____ (Seal)
                                                                       -Borrower

_____ (Seal)       _____ (Seal)
                           -Borrower                                    -Borrower

_____ (Seal)       _____ (Seal)
                           -Borrower                                    -Borrower

_____ (Seal)       _____ (Seal)
                           -Borrower                                    -Borrower

STATE OF COLORADO,                                    County ss:

The foregoing instrument was acknowledged before me this 25TH day of OCTOBER 2001
, by   STEVEN THOMAS GORBET

Witness my hand and official seal.
My Commission Expires: 05/08/2002            _____
                                             Notary Public

VMP-4N(CO) (9802)                   Page 8 of 8

FHA Case No.
052-1878595-734

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 24th          day of   October      ,  2001 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to

CH Mortgage Company I, Ltd.

("Lender") of the same date and covering the Property described in the Security Instrument and located at:
 1638 South Deframe Street B-6,Lakewood, Colorado 80228

[Property Address]
The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

Building 6, Unit B-6, Lakewood Vista at Green Mountain Ranch

[Name of Condominium Project]
("Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

FHA Multistate Condominium Rider - 10/95
-586 (9801)
VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 2          Initials: ___

LAND TITLE

D814641-mN.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.

C.  If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_Steven Thomas Gorbet_ _____ (Seal)
Steven Thomas Gorbet                          -Borrower

_____ (Seal)
                                              -Borrower

_____ (Seal)
                                              -Borrower

_____ (Seal)
                                              -Borrower

_____ (Seal)
                                              -Borrower

_____ (Seal)
                                              -Borrower

_____ (Seal)
                                              -Borrower

_____ (Seal)
                                              -Borrower

-588 (9601)                    Page 2 of 2

STATE OF Colorado    )
                     ) ss.
COUNTY OF Jefferson  )

The foregoing instrument was acknowledged before me this 25TH day of OCTBER , 2001 by Steven Thomas Gorbet

My Commission Expires: 05/08/2002

Notary Public

FHA Case No.
052-1878595-734

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this 24th        day of October        , 2001 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note
("Note") to

CH Mortgage Company I, Ltd.
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

1638 South Deframe Street B-6, Lakewood, Colorado 80228

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Date**
    The interest rate may change on the first day of        January        ,        2003    , and on that day
of each succeeding year. "Change Date" means each date on which the interest rate could change.

    **(B) The Index**
    Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly
average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available
by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the
Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index
prescribed by the Secretary. As used in this Rider, "Secretary means the Secretary of Housing and Urban
Development or his or her designee." Lender will give Borrower notice of the new Index.

FHA Multistate ARM Rider - 10/95
    -591 (9801)
    VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3        Initials: _STG_



D814641.MN.

**(C) Calculation of Interest Rate Changes**

Before each Change Date, Lender will calculate a new interest rate by adding a margin of
TWO AND THREE-FOURTHS                         percentage point(s) (   2.750                    %) to
the Current Index and rounding the sum to the nearest one-eighth of one percentage point (0.125%). Subject to
the limits stated in paragraph (D) of this Rider, this rounded amount will be the new interest rate until the next
Change Date.

**(D) Limits on Interest Rate Changes**



The existing interest rate will never increase or decrease by more than one percentage point (1.0%) on any
single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than
the initial interest rate, as stated in Paragraph 2 of the Note.

**(E) Calculation of Payment Change**

If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of
principal and interest which would be necessary to repay the unpaid principal balance in full at the Maturity Date
at the new interest rate through substantially equal payments. In making such calculation, Lender will use the
unpaid principal balance which would be owed on the Change Date if there had been no default in payment on
the Note, reduced by the amount of any prepayments to principal. The result of this calculation will be the
amount of the new monthly payment of principal and interest.

**(F) Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate and monthly payment amount. The
notice must be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the
date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly
payment amount, (vi) the Current Index and the date it was published, (vii) the method of calculating the change
in monthly payment amount, and (viii) any other information which may be required by law from time to time.

**(G) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs (C) and (D) of this Rider will become effective
on the Change Date. Borrower shall make a payment in the new monthly amount beginning on the first payment
date which occurs at least 25 days after Lender has given Borrower the notice of changes required by paragraph
(F) of this Rider. Borrower shall have no obligation to pay any increase in the monthly payment amount
calculated in accordance with paragraph (E) of this Rider for any payment date occurring less than 25 days after
Lender has given the required notice. If the monthly payment amount calculated in accordance with paragraph
(E) of this Rider decreased, but Lender failed to give timely notice of the decrease and Borrower made any
monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then
Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon
at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request
that any excess payment, with interest thereon at the Note rate, be applied as payment of principal. Lender's
obligation to return any excess payment with interest on demand is not assignable even if the Note is otherwise
assigned before the demand for return is made.

CMSD-591(9801)                          Page 2 of 3                          Initials: _STG_

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Steven Thomas Gorbet_ (Seal)
Steven Thomas Gorbet          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

STATE OF Colorado   }
                    } ss.
COUNTY OF Jefferson }

The foregoing instrument was acknowledged before me this 25TH day of OCTOBER , 2001   by Steven Thomas Gorbet

My Commission Expires: 05|08|2002

_____
Notary Public

591 (9601)                    Page 3 of 3

C185

Multistate

# ADJUSTABLE RATE NOTE

FHA Case No. 1017841

052-1878595-734

October 24, 2001

LOAN #: CP2195061

[Date]

1638 South Deframe Street B-6, Lakewood, Colorado 80228

[Property Address]

## 1. PARTIES

1000302-000000219SS-2

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means

CH Mortgage Company I, Ltd.

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of

ONE HUNDRED SIXTY THOUSAND SEVEN HUNDRED SEVENTY SIX & 00/100

Dollars (U.S. $    160,776.00    ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at a rate of        FOUR AND ONE-HALF percent (        4.500    %) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5(C) of this Note.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on December 1  ,  2001    . Any principal and interest remaining on the first day of        November  , 2031    , will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at    5670 Greenwood Plaza Blvd., #420, Englewood, CO  80111

or at such other place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Initially, each monthly payment of principal and interest will be in the amount of U.S. $        814.63 This amount will be part of a larger monthly payment required by the Security Instrument that shall be applied to principal, interest and other items in the order described in the Security Instrument. This amount may change in accordance with Paragraph 5(E) of this Note.

## 5. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Date

The interest rate may change on the first day of January          ,  2003    , and on that day of each succeeding year. "Change Date" means each date on which the interest rate could change.

### (B) The Index

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board.

**FHA Multistate Adjustable Rate Note - 10/95**

VMP -590 (9601)
®

VMP MORTGAGE FORMS · (800)521-7291

Page 1 of 3                Initials: BTG



C186

"Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary ( as defined in Paragraph 7(B)). Lender will give Borrower notice of the new Index.

#### (C) Calculation of Interest Rate Changes

Before each Change Date, Lender will calculate a new interest rate by adding a margin of      TWO AND THREE-FOURTHS percentage point(s) (      2.750      %) to the Current Index and rounding the sum to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Paragraph 5(D) of this Note, this rounded amount will be the new interest rate until the next Change Date.

#### (D) Limits on Interest Rate Changes

The existing interest rate will never increase or decrease by more than one percentage point (1.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

#### (E) Calculation of Payment Change

If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of principal and interest which would be necessary to repay the unpaid principal balance in full at the Maturity Date at the new interest rate through substantially equal payments. In making such calculation, Lender will use the unpaid principal balance which would be owed on the Change Date if there had been no default in payment on the Note, reduced by the amount of any prepayments to principal. The result of this calculation will be the amount of the new monthly payment of principal and interest.

#### (F) Notice of Changes

Lender will give notice to Borrower of any change in the interest rate and monthly payment amount. The notice must be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly payment amount, (vi) the Current Index and the date it was published, (vii) the method of calculating the change in monthly payment amount, and (viii) any other information which may be required by law from time to time.

#### (G) Effective Date of Changes

A new interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date. Borrower shall make a payment in the new monthly amount beginning on the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by Paragraph 5(F) of this Note. Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with Paragraph 5(E) of this Note for any payment date occurring less than 25 days after Lender has given the required notice. If the monthly payment amount calculated in accordance with Paragraph 5(E) of this Note decreased, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest thereon at the Note rate, be applied as payment of principal. Lender's obligation to return any excess payment with interest on demand is not assignable even if this Note is otherwise assigned before the demand for return is made.

### 6. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 7. BORROWER'S FAILURE TO PAY

#### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of      four      percent (      4.      %) of the overdue amount of each payment.

#### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all

accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 8. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

| | |
|---|---|
| _____ (Seal) -Borrower | _Steven Thomas Gorbet_ (Seal) -Borrower<br>Steven Thomas Gorbet |
| _____ (Seal) -Borrower | _____ (Seal) -Borrower |
| _____ (Seal) -Borrower | _____ (Seal) -Borrower |
| _____ (Seal) -Borrower | _____ (Seal) -Borrower |

PAY TO THE ORDER OF
Wells Fargo Home Mortgage, Inc.
WITHOUT RECOURSE
CH MORTGAGE COMPANY I, LTD.

_Sue Lockenvitz_
SUE LOCKENVITZ, ASSISTANT SECRETARY

WITHOUT RECOURSE
PAY TO THE ORDER OF

Wells Fargo Home Mortgage, Inc.

By _Deanna Martin_
Deanna Martin
Assistant Secretary

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:                                                    Bankruptcy No. 08-21940 ABC
                                                          Chapter 7
STEVE T GORBET,
Debtor,

WELLS FARGO BANK, N.A.,
Movant,

STEVE T GORBET, and
David E. Lewis,
the Chapter 7 Trustee,
Respondents.

---

## NOTICE OF HEARING OR PRELIMINARY HEARING

---

YOU ARE HEREBY NOTIFIED that a Motion for Relief from Automatic Stay, a copy of which is attached hereto, has been filed with this Court.  A HEARING ON THE MOTION HAS BEEN SET FOR **9:00 AM**, in **Courtroom C**, U.S. Customs House, 721 19th Street, Denver, Colorado 80202-2508 on **October 16, 2008**.  The hearing will be conducted in accordance with the provisions of Local Bankruptcy Rule 401.

If you desire to oppose this Motion you are REQUIRED TO FILE WITH THIS COURT AND SERVE upon Movant's attorneys, whose address is 999 18th Street, Suite 2201, Denver, CO 80202, a written response to the Motion FIVE COURT DAYS PRIOR TO THE DATE OF THE HEARING.

IF YOU FAIL TO FILE A RESPONSE, AN ORDER GRANTING THE RELIEF REQUESTED WILL BE GRANTED WITHOUT FURTHER NOTICE TO YOU.

Dated:  September 18, 2008

CASTLE MEINHOLD & STAWIARSKI, LLC

_____
Britney Beall-Eder, #34935
Jeremy Peck, #36588
Katharine E. Fisher #39230
Attorneys for Movant
999 18th Street, Suite 2201
Denver, CO  80202
303-865-1440
(303) 865-1410 (facsimile)

File No. 08-04415

In re:
STEVE T GORBET,

Case No.       08-21940 ABC

## CERTIFICATE OF MAILING

The undersigned hereby certifies that on _____9/18/08_____, the foregoing **NOTICE OF HEARING OR PRELIMINARY HEARING** with a copy of the **MOTION FOR RELIEF FROM AUTOMATIC STAY** was placed in the United States mail, first class postage prepaid, to the following:

Steve T Gorbet
2060 Harmony Park Drive
Westminster, CO  80234

Jane M. Roberson, Esq.
9035 Wadsworth Parkway
Suite 1650
Westminster, CO  80021

David E. Lewis
Chapter 7 Trustee
1314 Main St.
Ste. 102
Louisville, CO  80027

File No. 08-04415